[Civ. No. 42313. First Dist., Div. One. Dec. 7, 1979.]

KEITH TIPTON, Plaintiff and Appellant, v.
SYSTRON DONNER CORPORATION et al.,
Defendants and Respondents.

[Civ. No. 42442. First Dist., Div. One. Dec. 7, 1979.]

KEITH TIPTON, Plaintiff and Appellant, v.
INFORMATION DATA SYSTEMS, Defendant and Respondent.

502

**COUNSEL**

Myers, Hawley, Morley & Moore, John Beban and John M. Moore for Plaintiff and Appellant.

O'Gara & McGuire, E. James McGuire, William R. Benz and Lingel H. Winters for Defendants and Respondents.

OPINION

**NEWSOM, J.**—The present appeals are from a judgment confirming an arbitration award, and from a judgment denying, in part, a motion to tax costs—the two appeals having been consolidated by stipulation.

Appellant Keith A. Tipton, and respondents Systron Donner Corporation and Information Data Systems (hereinafter IDS), entered into a written shareholder agreement on July 28, 1971. Under a provision thereof for arbitration of any dispute arising from its terms, each party could select an arbitrator; if they failed to agree, they were empowered to name a third arbitrator.

After serious disputes arose in 1973, appellant sued respondents Systron Donner Corporation and certain officers thereof, alleging breaches of the shareholders' agreement.

Systron selected Harold C. Nachtrieb as its arbitrator, while appellant selected Frank Stillman; and the two, unable to agree on a resolution of the issues, chose as a neutral arbitrator, Professor Kagel, a well known authority and the principal draftsman of the California arbitration law.

When, in 1974, IDS terminated Tipton's employment for "continued neglect" and "willful misconduct," the parties agreed that these issues would be included in those already to be arbitrated under the shareholders' agreement, and that IDS would be added as a party to the arbitration.

After 10 days of hearings before Nachtrieb, Stillman and Kagel, during which Kagel alone exercised the powers vested in the neutral arbitrator under Code of Civil Procedure section 1280.2, Kagel called an executive session of the arbitration panel on July 6, 1976, and presented his proposed written opinion and decision. We need not discuss the merits of the opinion: suffice it to say that the decision was unfavorable to Tipton; that it concluded there had been just cause for his

termination and required him to sell his IDS stock for $20,100. Nachtrieb concurred with Kagel, while Stillman dissented.

Appellant then filed a petition to vacate the arbitration award on the grounds, inter alia, that one of the arbitrators—Nachtrieb—was biased and partial, since he had been for some time respondents' attorney.

The matter was heard by the superior court sitting without a jury. The court denied vacation, confirmed the award, ordered appellant to deliver his IDS shares to that company, and awarded respondents' costs of suit.

It is from this decision that the present appeals are taken.

I

We are of the opinion that no error occurred in the trial court's confirmation of the award.

■ Arbitration, which has been defined as "a voluntary procedure for settling disputes, leading to a final determination of the rights of the parties . . ." (cf. 6 Cal.Jur.3d, Arbitration and Award, § 1, pp. 6-8), is a matter of contract, governed by Code of Civil Procedure section 1280 et seq. (Cf. *Atlas Plastering, Inc.* v. *Superior Court* (1977) 72 Cal.App.3d 63, 69 [140 Cal.Rptr. 59]; *Lehto* v. *Underground Constr. Co.* (1977) 69 Cal.App.3d 933 [138 Cal.Rptr. 419]).

As provided in the shareholders' agreement, each party was to, and did, appoint an arbitrator, and the two appointed a "neutral" arbitrator, who, in the absence of an agreement to the contrary, possesses special powers and duties which the arbitrators appointed by the parties do not possess. (Code Civ. Proc., § 1282 et seq.)

■ There is no statutory requirement that the arbitrators appointed by the parties must be neutral or impartial. (Cf. *Arrieta* v. *Paine, Webber, Jackson & Curtis, Inc.* (1976) 59 Cal.App.3d 322, 330 [130 Cal.Rptr. 534]; *Federico* v. *Frick* (1970) 3 Cal.App.3d 872, 876 [84 Cal.Rptr. 74].) Nor does the shareholders' agreement contain any such requirement, but instead gives each party an unqualified contract right to appoint his own arbitrator.

Neither party has cited, nor have we found, a California decision directly on point, but we think the underlying rationale of the neutral arbitrator provisions of the code recognizes that, as noted in 3 California Law Revision Commission (1960) pages G-5-G-42, "the arbitrators representing the parties frequently behave more like advocates than arbitrators." A special relationship between the non-neutral arbitrator and his client is implicit in the nature of the tripartite format here freely adopted by the parties. In *Astoria Medical Group v. Health Ins. Plan of Gr. N.Y.* (1962) 11 N.Y.2d 128 [227 N.Y.S.2d 401, 182 N.E.2d 85, 88], cited by respondents, and which involved an arbitration clause quite similar to that before us, the court noted: "In the light of accepted practice, which sanctions and contemplates two non-neutral arbitrators on a tripartite board, the parties must be deemed to have intended that each was to be free to appoint any arbitrator desired, however close his relationship to it or to the dispute. Moreover, this conclusion is reinforced by the fact that the provision relating to arbitration contains no word of limitation on the identity, status or qualifications of the arbitrators; had the parties intended that their appointees be completely impartial or disinterested, they could have readily *so* provided," and added the apposite comment that "if they choose to have their disputes resolved by a body consisting of two partisan arbitrators, and a third neutral arbitrator, that is their affair. We may not rewrite their contract." (*Id.*)

We also note that the record is devoid of evidence showing any misconduct or impropriety on Nachtrieb's part, and, indeed, no such finding was made by the trial court, which concluded that Nachtrieb had acted in an open, honest and straightforward manner throughout the proceedings. (Cf. findings No. 9, 14, 15, 18, 19 and 20.)

## II

■ Appellant next contends that, irrespective of any actual bias and partiality, "The arbitration award must be vacated because of [Nachtrieb's] failure to disclose his fiduciary relationship with respondents at the outset of the arbitration proceedings."

There is no merit in this contention, which relies mistakenly on a series of cases concerning the alleged bias or partiality of *neutral,* not party-appointed, arbitrators. (Cf. *Gonzales v. Interinsurance Exchange* (1978) 84 Cal.App.3d 58 [148 Cal.Rptr. 282]; *San Luis Obispo Bay*

*Properties, Inc.* v. *Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556 [104 Cal.Rptr. 733]; and *Johnston* v. *Security Ins. Co.* (1970) 6 Cal. App.3d 839 [86 Cal.Rptr. 133].)

We are of the opinion that even if Nachtrieb failed to reveal his relationship with respondents—and the record is devoid of proof that he did—such neglect would not, absent a showing of corrupt intent and prejudice to appellant, vitiate his right to act as a party-arbitrator under the terms of the shareholders' agreement and statutory and case law.

### III

■ Appellant asserts error in the trial court's award to respondents of the costs of both the arbitration and the court proceedings. We find no such error, since the agreement of the parties expressly provided, in paragraph B, that in the event a party refused to abide by the award "all costs, including those incurred in the court proceedings, shall be assessed against and borne by the disaffirming party."

It is in our view disingenuous for appellant to claim that a later oral agreement of the parties to split the fees of the neutral arbitrator, Professor Kagel, and pay their own arbitrators' fees, was intended to modify the written agreement respecting costs. A close reading of the record discloses no evidence that the parties ever attempted to modify those provisions of the shareholders' agreement which assessed "all costs" against the disaffirming party.

The trial court, in confirming the arbitration award, awarded to respondents "costs of suit incurred herein," but included in such order the total amount of Kagel's fees, half of which—appellant's—remained unpaid in the amount of $4,965. The other cost item was $2,532.95 to cover the reporter's fee for the arbitration hearing.

The California arbitration statutes distinguish between arbitration costs and costs of related judicial proceedings. Code of Civil Procedure section 1284.2 governs the former, and provides that each party shall pay his pro rata share, unless the arbitration agreement provides otherwise; while Code of Civil Procedure section 1293.2 provides that *"The court* shall award costs upon any judicial proceeding ...." (Italics added.)

Here, of course, the court awarded respondents' costs relating both to arbitration *and* judicial proceedings, there having been no award made in the arbitration proceedings.

Our view is that, while in a sense the arbitration had terminated when the award was made, nevertheless under the shareholders' agreement a party's right to "all costs" could only arise after the other party had refused to abide by the award, and court action had been required to pass upon its propriety.

We believe paragraph 13 was intended to provide that the court make an award of such costs, as the following language indicates: "The costs of any arbitration shall be borne equally by the parties, except in the instance of refusal of a party to abide thereby, in which event and should the award be confirmed by judicial order in conformity with the said provisions of said Title, *all costs, including those incurred in the court proceedings,* shall be assessed against and borne by the disaffirming party." (Italics added.)

In short, the parties themselves vested the court with jurisdiction to make the dual cost award.

█ Appellant's final contention is that "the allowance to respondents of appellant's share of the neutral arbitrator's fee was erroneous because it was not a cost paid or incurred by respondents."

Respondent IDS proposed offsetting against the $20,100 found to be owed by them to appellant for his stock in IDS, the $4,965 appellant owed Kagel.

We find no authority justifying such procedure. Because the unpaid portion of Kagel's fee was an obligation incurred by appellant, not respondents, it is clear the court erred in awarding to respondents the appellant's share of the neutral arbitrator's fee. (Cf. Code Civ. Proc., § 1033; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 100, pp. 3255-3256.)

That part of the judgment permitting such offset is reversed, and the judgment is otherwise affirmed in all respects.

Racanelli, P. J., and Grodin, J., concurred.